# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| AMIR JAMAL TAUWAB, et al., | ) | CASE NO.  5:13cv2036 |
| | ) | |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| STEVE BARRY, SHERIFF, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Plaintiffs, Amir Jamal Tauwab ("Tauwab") and The Tauwab Group, LTD ("TTGL"), commenced this action on September 13, 2013, asserting the deprivation of constitutional rights arising out of the September 11, 2013 repossession of a vehicle. The matter is before the Court upon a series of motions filed by the parties. Specifically, the Court will address the motion of defendants Steve Barry and John Peake to dismiss (Doc. No. 12), plaintiffs' motion for leave to file a second amended complaint (Doc. No. 17), plaintiffs' motion for immediate return and release of the seized vehicle (Doc. No. 20), plaintiffs' motion for partial summary judgment (Doc. No. 29), plaintiffs' motion to voluntarily withdraw the motion for leave to file a second amended complaint (Doc. No. 30), and plaintiffs' motion for leave to file a third amended complaint. (Doc. No. 31.)

## I. BACKGROUND

On or about August 1, 2013, Tauwab contacted defendant Ron Marhoffer Hyundai ("Marhoffer"), a Hyundai dealership operating in Summit County, Ohio, for the

purpose of discussing the purchase of a 2013 Hyundai Equus. (Am. Compl., Doc. No. 4 at ¶¶ 8, 12.) Tauwab was directed to Jerrod Giebel ("Giebel"), a salesperson employed by Marhoffer. (*Id*. at ¶ 13.) After several conversations with Giebel, over a period of "a few days," Tauwab visited Marhoffer's dealership on August 5, 2013 and consummated the sale of the vehicle. (*Id*. at ¶ 14.) According to plaintiffs, Tauwab purchased the 2013 Hyundai Equus for $52,089.60 and remitted the sale amount to Giebel. (*Id*.) Following the purchase, Giebel delivered the vehicle to Tauwab. (*Id*. at ¶ 15.)

On August 14, 2013, Marhoffer transferred the Ohio Certificate of Title for the vehicle to Tauwab. (*Id*. at ¶ 17.) Tauwab, in turn, transferred the title of the vehicle to TTGL the following day (August 15, 2013). (*Id*. at ¶ 18.) After title passed to TTGL, Tauwab purchased tire and wheel insurance and pin striping for the vehicle. (*Id*. at ¶¶ 19, 20.)

On September 11, 2013, defendant John Peake, a lieutenant with the Summit County Sheriff's Department, and two unidentified Cleveland police officers, visited the offices of TTGL and demanded that Tauwab "surrender the [2013 Hyundai Equus] or be arrested." (*Id*. at ¶¶ 6, 21.) "Tauwab, under duress and fear of being unlawfully arrested, surrendered the [v]ehicle to Peake." (*Id*. at ¶ 23.)

Plaintiffs initially brought suit against Summit County and Marhoffer, as well as the following individuals: Drew Alexander—as Summit County Sheriff, Peake, and Giebel. On September 16, 2013, plaintiffs filed an amended complaint, wherein defendant Steve Barry was substituted for Drew Alexander as Summit County Sheriff. (Doc. No. 4.) On October 17, 2013, plaintiffs voluntarily dismissed Summit County and Giebel as party defendants. (Notice, Doc. No. 16.)

2

In the amended complaint, contained within a single cause of action, are allegations that defendants violated plaintiffs' right to due process of law and their right to be free from "false arrest, harassment and unlawful seizure[.]" (Doc. No. 4 at ¶¶ 31-32.) Plaintiffs cite the Fourth and Fourteenth Amendments as the source of their constitutional claims (*id*.), and identify 42 U.S.C. § 1983 as the vehicle by which they intend to redress the alleged constitutional violations. (*Id*. at ¶ 1.)

TTGL was initially represented by counsel, while Tauwab has, from the inception of the lawsuit, proceeded *pro se*. On April 17, 2014, the Court granted the motions of attorneys Robert Smith, III and Kerry O'Brien to withdraw as counsel for TTGL. (Doc. No. 41 [ruling on Doc. Nos. 38, 39].) The Court instructed TTGL to obtain alternative counsel, but—as of the date of this Opinion and Order—no replacement counsel has entered an appearance on behalf of TTGL. With the exception of plaintiffs' motion for partial summary judgment, all motions were fully briefed and at issue before TTGL's counsel withdrew.[1]

## II. Defendants' Motion to Dismiss

In a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), defendants Barry and Peake seek the dismissal of Tauwab and Barry from this litigation. (Doc. No. 12.) Plaintiffs oppose the motion (Doc. No. 13), and defendants Barry and Peake have replied. (Doc. No. 34.)

---

[1] TTGL was still represented by counsel when it, along with Tauwab, moved for partial summary judgment. On December 27, 2013, the Court suspended briefing on plaintiffs' summary judgment motion.

A. <u>Standard of Review</u>

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 80 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556 n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a

court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

      B.    <u>Tauwab's Standing</u>

      Barry and Peake maintain that Tauwab lacks standing to challenge any constitutional violations relating to the repossession of the 2013 Hyundai Equus. Noting that it is undisputed that Tauwab transferred title of the vehicle to TTGL and that TTGL was the title holder of the vehicle on the day it was repossessed, they insist that Tauwab "cannot personally seek damages for property he alleges was taken from another," namely, TTGL. (Doc. No. 12 at 78.)

      "[I]t is a basic principle that an action under 42 U.S.C. § 1983 inures only to the benefit of one whose own personal constitutional rights were violated." *Brown v. City of Louisville*, 33 F.3d 54, at *2 (6th Cir. Aug. 23, 1994) (unreported table decision) (citations omitted); *see Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) ("In the Sixth Circuit, a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort.") (citations omitted). As such, a party generally lacks standing to sue for the deprivation of another's constitutional rights. *Quarles v. City of East Cleveland*, 202 F.3d 269, at *2 (6th Cir. Dec. 20, 1999) (unreported table decision); *see Hall v. Wooten*, 506 F.2d 564, 566 (6th Cir. 1974) ("one may not sue for the deprivation of another's civil rights") (citation omitted). "This limitation on standing applies even to civil rights claims brought [by individuals] in the place of corporations." *Quarles*, 202 F.3d 269, at *3.

      Tauwab insists that the transfer of title to his corporation did not divest him of standing. He looks to the actions he took, and the injuries he claims he sustained,

to attempt to satisfy the standing threshold. With respect to his actions, Tauwab underscores the fact that he purchased the vehicle, itself, and purchased insurance and pin-striping for the vehicle. (Doc. No. 13 at 84 [citing Doc. No. 4 at ¶¶ 14, 19, 20].) These actions notwithstanding, it is undisputed that he transferred his ownership interest in the vehicle to TTGL, and that TTGL was the title holder of the property in question on the day it was repossessed. Having voluntarily stripped himself of any ownership interest in the vehicle, Tauwab lacks standing to challenge the constitutionality of the deprivation of this property.

The case cited by plaintiffs in their opposition does not counsel in favor of a contrary conclusion. In *Petty v. Bd. of Cnty. Comm'rs of Cnty. of Wyandotte, Kan.*, 168 F.R.D. 46 (D. Kan. 1996), the plaintiff had been awarded clear title to a car in a divorce, but she failed to take the necessary steps to effectuate the transfer of title. When the car was impounded for lack of valid registration, plaintiff brought suit under § 1983 challenging the deprivation of her property. The district court ruled that the divorce decree gave the plaintiff a protected property interest in the car, and, thus, afforded standing for the subsequent civil rights action. *Id*. at 50. Unlike the plaintiff in *Petty*, Tauwab does not have an enforceable interest in the 2013 Hyundai Equus to provide him with standing to bring this lawsuit on his own behalf.

Tauwab also highlights the injuries he claims he sustained as a result of defendants' conduct to establish standing. The amended complaint provides that, "[a]s a result of all of the foregoing [actions taken by defendants], the [p]laintiffs have experienced severe humiliation, emotional distress, and loss of the [v]ehicle and the costs associated therein." (Doc. No. 4 at ¶ 24.) He also claims that he "has suffered severe

6

economic injury to the tune of $52,089.60[.]" the purchase price of the vehicle. (Doc. No. 13 at 86 [citing Doc. No. 4 at ¶ 14].) An exception to the rule that prevents shareholders and company owners from bringing individual civil rights action exists where the "'shareholder suffers an injury separate and distinct from that suffered by . . .' the corporation as an entity[.]" *Quarles*, 202 F.3d 269, at *3 (quoting *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 315 (6th Cir. 1987), *modified at* 933 F.2d 400 (6th Cir. 1991)).

To the extent that Tauwab seeks damages for economic and emotional distress resulting from the repossession of the vehicle, this act does not flow from the violation of *his* constitutional rights. A party may not seek damages for economic and emotional distress suffered because another's constitutional rights were violated. *See Claybrook*, 199 F.3d at 357 ("only the purported victim . . . may prosecute a section 1983 claim; conversely, no cause of action may lie under 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered" by others); *see, e.g., Pierzynowski v. Police Dep't City of Detroit*, 941 F. Supp. 633, 640-41 (E.D. Mich. 1996) (parents of child arrested by police could not sue for "mental anguish, humiliation, [and] embarrassment" suffered because of child's arrest) (internal quotation omitted); *Pierce v. Stinson*, 493 F. Supp. 609, 611 (E.D. Tenn. 1979) (Parents "have no standing to maintain an action in their own behalf to recover for the deprivation of the civil rights of their children.") As such, Tauwab cannot claim that he was vicariously injured through the alleged constitutional violation visited upon TTGL, the title owner of the vehicle.

Tauwab also appears, however, to seek damages for injuries he suffered when Peake threatened to arrest him if he interfered with the repossession of the vehicle. (Doc. No. 4 at ¶¶ 21, 23, 24, 32.) "It is well settled that neither verbal harassment nor the

mere use of abusive language can support liability under § 1983." *Farris v. City of Memphis*, No. 07-2659-JDB/dkv, 2008 WL 1994824, at *2 (W.D. Tenn. May 5, 2008) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)). Courts have consistently held that rude behavior and verbal harassment by officers, including threats of arrest, do not rise to the level of a cognizable constitutional claim. *See, e.g., Logue v. U.S. Marshals*, No. 1:13-cv-348, 2013 WL 3983215, at *4 (S.D. Ohio Aug. 1, 2013) (collecting cases); *Newsome v. Erwin*, 137 F. Supp. 2d 934, 940 n.5 (S.D. Ohio 2000) (general allegation that police threatened to arrest plaintiff if he left his property "fail[ed] to state a viable § 1983 claim"). For example, in *Farris*, the court rejected a mother's claim that she suffered damages when an officer threatened to arrest her after she complained about harassment her daughter was experiencing in school. *Id*. at *2. Likewise, the alleged threat to arrest Tauwab cannot support a § 1983 action.

Because the allegations in the amended complaint fail to establish that Tauwab has standing to assert a § 1983 action for the violation of his own constitutional rights, he is not a proper party to this litigation. The motion of Barry and Peake to dismiss Tauwab's claims is granted.

C.    Supervisory Liability

Barry also claims that he is entitled to dismissal from this action because the amended complaint fails to state a § 1983 claim against him. The allegations in the amended complaint against Barry are limited. It is alleged that Barry is the Summit County Sheriff and the supervisor of Peake (Doc. No. 4 at ¶ 5), and that Peake was "under the authority and direction of The Sheriff" (*id*. at ¶ 22) when he recovered the vehicle from TTGL. The amended complaint further provides that all defendants are sued

8

in their individual and official capacities. (*Id*. at ¶ 10.)[2] However, Barry is not alleged to have played any role in the recovery of the vehicle.

"A suit against an individual 'in his official capacity' has been held to be essentially a suit directly against the local government . . . ." *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989). Therefore, a suit against Barry in his official capacity as Summit County Sheriff is essentially a suit against Summit County. *See Petty v. Cnty. of Franklin*, *Ohio*, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that [the plaintiff's § 1983] suit is against [the sheriff] in his *official* capacity, it is nothing more than a suit against Franklin County itself.") (emphasis in original); *Leach*, 891 F.2d at 1245-46 (suit against mayor and county sheriff in their *official* capacity is a suit against the county, itself). Summit County has already been dismissed from this action, so if Barry is to remain a party defendant it must be in his individual capacity.

At best, the allegations against Barry suggest that he was Peake's supervisor on September 11, 2013.[3] A supervisor may not be held liable under 42 U.S.C.

---

[2] The amended complaint actually provides that "Tauwab sues all Defendants in their official and official capacities." (*Id*.) The Court believes that this sentence contains a typographical error, and that plaintiffs intended the sentence to read, "Tauwab sues all Defendants in their official and individual capacities."

[3] In actuality, the amended complaint does not even go this far. While the amended complaint states that Barry is currently the "duly elected Sheriff of Summit County, Ohio and supervisor of [d]efendant, John Peake" (*id*. at ¶ 5), it also provides that, "[a]t all times relevant" to the amended complaint, "[d]efendants *Drew Alexander* and John Peake acted toward Tauwab and TTGL under color of the statutes, ordinances, customs, and usage of the State of Ohio." (*Id*. at ¶ 11 [emphasis added].) It would seem that Drew Alexander held the position of Summit County Sheriff on September 11, 2013 and was later replaced by Steve Barry. To arrive at such a conclusion, however, the Court would have to assume facts not in the record, which the Court will not do. Of course, if Barry did not assume the position of sheriff until after the date of the repossession of the vehicle then he could not be held liable, in his individual capacity, for any acts occurring prior to his election or appointment. Nonetheless, the Court considers the sufficiency of the fact allegations against Barry without reference to his start date as sheriff. Moreover, to the extent that the amended complaint did not dismiss defendant Alexander as a defendant, in his individual capacity, the Court's analysis of the allegations relating to Barry as a supervisor apply equally to Alexander when he occupied that role.

§ 1983 solely upon a theory of *respondeat superior*. *Taylor v. Michigan Dep't of Corr*., 69 F.3d 76, 80-81 (6th Cir. 1995) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y*., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). "There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate*." *Id.* at 81 (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)) (emphasis in original); *see Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) ("Plaintiff must prove that [the supervisory defendants] did more than play a passive role in the alleged violations or show mere tacit approval of the goings on. Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors.") (internal citation omitted).

Beyond the general right to control the activities of Peake, the amended complaint fails to allege any involvement by Barry in the actions of Peake. "[T]he mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability." *Monell*, 436 U.S. at 694 n.58 (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976)). Even assuming the allegations in the amended complaint are true, the most that can be said of Barry's involvement is that he was aware of Peake's activities and "failed to take corrective actions[.]" (Doc. No. 4 at ¶ 29.) "This is insufficient to impose liability on supervisory personnel [such as Barry] under § 1983."[4] *Poe v. Haydon*, 853 F.2d 418,

---

[4] The Court notes that the allegations in the proposed third amended complaint do not cure this deficiency.

429 (6th Cir. 1988) (noting that "[a]t best, [plaintiff] has merely claimed that [her supervisors] were aware of alleged harassment, but did not take appropriate action.") (citing *Bellamy*, 729 F.2d at 421). Defendant Barry is dismissed from this action.

### III. PLAINTIFFS' MOTIONS TO AMEND

On October 17, 2013, plaintiffs moved for leave to file a second amended complaint. (Doc. No. 17.) On December 12, 2013, plaintiffs moved to withdraw their motion to file a second amended complaint. (Doc. No. 30.) The motion to withdraw is granted.

Plaintiffs now seek leave to file a third amended complaint *instanter*. (Doc. No. 31.) According to the motion, since the filing of the amended complaint and the motion for leave to file the second amended complaint, plaintiffs "have learned of other salient facts that are necessary for a just and fair adjudication of the case, *sub judice*." (Motion, Doc. No. 31 at 219.) Specifically, plaintiffs seek to add an additional defendant, Detective Larry Brown, and additional claims for retaliation, breach of contract, and breach of state law property rights. Defendants oppose the motion. (Doc. No. 35.)

Rule 15(a)(2) of the Federal Rules of Civil Procedure governs the plaintiffs' motion. It provides, in relevant part, that the Court should "freely give leave" to amend pleadings "when justice so requires." "Nevertheless, denying leave is appropriate in instances of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013)

(quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

Courts should freely give leave to amend in the absence of these factors. *Foman*, 371

U.S. at 182. Defendants oppose amendment on the basis of futility.

A futile claim, for purposes of a Rule 15(a)(2) motion, would not

withstand a Rule 12(b) motion to dismiss. *Bergmoser v. Smart Document Solutions, LLC*,

268 F. App'x 392, 396 (6th Cir. 2008) (citation omitted). It is well settled that "a court

need make only a minimal assessment of the merits of any proposed new claims[.]" *Fred

Martin Motor Co. v. Crain Commc'ns, Inc.*, No. 5:12-cv-1479, 2013 WL 626499, at *2

(N.D. Ohio Feb. 20, 2013) (citations omitted). "Namely, it must conclude that the

proposed claims are not 'clearly futile' due to facial lack of merit, frivolousness, lack of

jurisdiction, or other obvious legal defect." *Id.* (citations omitted).

### A.    Breach of Contract

The proposed breach of contract claim would add the following

allegations:

> 30. On September 10, 2013 at approximately 3:30pm, Marhoffer contacted Tauwab, asserting that he had not paid for the vehicle.
>
> 31. On September 10, 2013 at approximately 3:40pm, Tauwab telephoned Giebel, advising him that Marhoffer had contacted Tauwab asserting that he had not paid for the Vehicle.
>
> 32. On September 10, 2013, Giebel advised Tauwab that the Vehicle was in fact paid for and that the representative of Marhoffer was confusing the Vehicle deal with the deal of [ ] two additional automobiles . . . .
>
> ***
>
> 65. Marhoffer committed a state law claim of breach of contract action when:
>      a) Marhoffer contacted Peake and requested seizure of the Vehicle without returning $52,089.60 to Plaintiffs.

66. As a direct and proximate cause of Marhoffer's state law violations, the Plaintiffs have incurred damages in an amount of $52,089.60

(Doc. No. 31-1 at 227, 231 [typographical errors, spacing, and punctuation in original].)

To recover on a breach of contract, the plaintiff must prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Powell v. Grant Med. Ctr.*, 771 N.E.2d 874, 881 (Ohio Ct. App. 2002) (citations omitted). Though inartfully drafted, the new allegations, coupled with the existing allegations presented in the amended complaint and carried forward into the proposed third amended complaint, set forth facts that, if believed, would establish the essential elements of a breach of contract claim under Ohio law. While the claim can only be maintained by TTGL, the title holder of the vehicle on the date in question, the third amended complaint properly sets forth a breach of contract claim against Marhoffer. The Court will permit the further amendment of the amended complaint to add a breach of contract claim.

### B.    Retaliation and Detective Brown

At the center of plaintiffs' proposed retaliation claim is Larry Brown, a "Detective in the Summit County Sheriff's Department." (Doc. No. 31-1 at ¶ 7.) Specifically, plaintiffs allege:

46. On October 21, 2013, Tauwab and TTGL filed a Motion For Immediate Return and Release Of The Seized Motor Vehicle in this matter.

47. On November 4, 2013, the Defendants filed their respective Responses to the Motion discussed in ¶46 above, asserting **Ohio Revised Code §4505.17** as their defense.

48. On November 25, 2013, the Plaintiffs filed a motion For Partial Summary Judgment in this case.

13

49. S*ection II (B)* of the Motion For Partial Summary Judgment expressly states as follows: "In the case, *sub judice*, it is undisputed that neither Tauwab nor TTGL have been prosecuted criminally for theft of the Vehicle. Ergo, inasmuch as the criminal offense of theft is required for application of **Ohio Revised Code, §4505.17**, mar offers' allegations of theft exist only in its own sophomoric mind."

50. That resultant of the acts discussed in ¶¶46, 48, and 49, and in direct retaliation for Plaintiffs' having aggressively asserted their constitutional rights in this case, Brown has threatened Tauwab with criminal prosecution.

51. Brown's threats of criminal prosecution are retaliatory for the Defendants' lack of a credible defense to the claims herein.

52. At all times relevant herein, Brown was acting under the supervision of the Sheriff and Peake.

53. The Sheriff and Peake have failed to take corrective action concerning the allegations contained in ¶¶46-52 above.

*** 

62. Plaintiffs' Fourth and Fourteenth Amendment liberty interest in being free from retaliation were violated when:

    a)    Brown threatened Tauwab with criminal prosecution in an effort to squash this case.

63. As a direct and proximate cause of Brown's retaliatory actions, Tauwab has incurred damages in the amount of $250,000.00.

(Doc. No. 31-1 at 229, 231 [all emphasis, punctuation, spacing, and capitalization in original].)

"Retaliation claims arise in any number of contexts. The essence of such a claim is that the plaintiff engaged in conduct protected by the Constitution or by statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken (at least in part) because of the protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d

378, 386-87 (6th Cir. 1999) (footnote omitted). As with any proposed amendment, the Court need not consider conclusory allegations that purport to assign a retaliatory motive to otherwise neutral facts. *See Iqbal*, 556 U.S. at 664 ("A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth.") Federal Civil Rules of Procedure 8 requires more than the theoretical possibility that unlawful conduct, such as retaliation, has taken place. Rather, such legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Iqbal*, 556 U.S. at 679. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

Here, the proposed amendments comprise nothing more than innocuous facts mixed with conclusory allegations. The allegations are wholly lacking in any factual support for plaintiffs' suspicions of retaliation. *See Bishop v. Lucent Tech., Inc*., 520 F.3d 516, 519 (6th Cir. 2008) ("Even under Rule 12(b)(6), a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient.") (emphasis in original, citation omitted). To allow this claim to be added on these allegations alone, without any factual support for the third element of retaliation—a causal connection—would amount to condoning a "'fishing expedition in order to find a cause of action.'" *Hollowell v. Cincinnati Ventilating Co*., *Inc*., 711 F. Supp. 2d 751, 767 (E.D. Ky. 2010) (quoting *Ranke v. Sanofi-Synthelabo Inc*., 436 F.3d 197, 204 (3d Cir. 2006)).

### C.    State Law Rights

Plaintiffs' final proposed claim seeks to vindicate the alleged unlawful violation of "state law rights" flowing from ownership of the vehicle in question.[5] (Doc. No. 31-1 at 230-31.) Plaintiffs cite no legal basis for this claim. To the extent that the amendment is attempting to restate a breach of contract claim, the Court has already ruled that it will permit further amendment by TTGL to set forth a contract claim.

It is also possible to construe the supporting allegations as purporting to set forth a due process claim under the United States Constitution. U.S. Const. amend. XIV. As previously stated, the amended complaint already appears to set forth a due process claim. The Court has serious concerns as to whether TTGL can maintain either a substantive or procedural due process claim. With respect to the former, the Supreme Court has held that substantive due process should not be relied upon to couch a constitutional claim when a specific constitutional protection, such as the Fourth Amendment right to be free from unlawful seizures, protects the right allegedly infringed. *United States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997) (citation omitted). As for procedural due process, TTGL has not alleged that the repossession was pursuant to an unconstitutional state procedure or that state law remedies, such as actions for conversion or replevin, are inadequate. *See Macene v. MJW,*

---

[5] The proposed third amended complaint provides, in relevant part:
>    59. Plaintiffs' state law rights as the titled owner and sole operator of the Vehicle were violated when:
>        a) The Vehicle was unlawfully confiscated without a warrant and without probable cause.
>        b) The Vehicle was unlawfully detained since September 11, 2013.
>    60. As a direct and proximate cause of Defendants' state law violations, Plaintiffs have incurred damages in an amount of $100,000.00.

(Doc. No. 31-1 at 230-31.)

*Inc.*, 951 F.2d 700, 706 (6th Cir. 1991) (setting forth the two ways a plaintiff can establish a procedural due process claim, and discussing the need to demonstrate inadequacy of state remedies for random and unauthorized state acts); *Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985) (Police retention of property seized in criminal investigation is not actionable under § 1983 if state remedies are available for return of property). Because the parties did not brief this issue, however, the Court will leave the adequacy of any due process claim for another day. Nonetheless, plaintiffs having failed to demonstrate that justice so requires the amendment proposed in paragraphs 59-60, this portion of plaintiffs' motion to amend is denied.

## IV. PLAINTIFFS' MOTION FOR IMMEDIATE RETURN OF THE VEHICLE

Plaintiffs also seek an order directing defendants, "specifically, Lieutenant John Peake, to immediately release and return the 2013 Hyundai Equus . . . which was seized on September 11, 2013 without a warrant." (Motion, Doc. No. 20 at 124.) Defendants oppose the motion (Doc. No. 22), and plaintiffs have filed a reply. (Doc. No. 23.)

Plaintiffs do not identify any legal basis for the relief they request. Federal Rule of Criminal Procedure 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." A motion under this rule operates as a civil action in equity when the owner properly invokes the rule after the resolution of a criminal proceeding. *United States v. Dusenbery*, 201 F.3d 763, 768 (6th Cir. 2000). However, relief under Rule 41(g) is only available where the property seized is in the possession of a federal government agent or agency. *See United States v. Oguaju*, 107 F. App'x 541, 542-43 (6th Cir. 2004)

17

(affirming denial of Rule 41(g) motion where property was seized by agents of the State of Michigan). It is clear from the amended complaint that the vehicle was seized by state agents, and there are no allegations that the vehicle currently resides in the possession of the federal government. Rule 41(g) cannot afford plaintiffs the relief they seek.

Another possible candidate is Federal Rule of Civil Procedure 64, which provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). Identified among the possible remedies available are attachment and replevin. Fed. R. Civ. P. 64(b). Rule 64 permits a plaintiff to utilize the state prejudgment remedies available to secure a judgment that might ultimately be rendered in an action. *See generally Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 436, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974). It is clear from the language of the rule that its purpose is to ensure that a fund will be available with which to satisfy a money judgment. *See Rosen v. Cascade Int'l Inc.*, 21 F.3d 1520, 1531 (11th Cir. 1994).

Plaintiffs do not seek to secure a fund available to satisfy a judgment at the conclusion of the trial, nor do they ask the Court to take possession of the vehicle and hold it in trust. Rather, plaintiffs request the immediate return of the very subject of the lawsuit. In defense of their motion, plaintiffs argue the merits of the underlying claims, insisting that the vehicle in question was seized without probable cause. (Memo. in Support, Doc. No. 20-1 at 128-31.) Defendants oppose the motion with the counter argument—there was probable cause. (Doc. No. 22 at 151-53.) These arguments go to the

18

ultimate issue in the case and are best left for dispositive motions or trial. Plaintiffs having failed to demonstrate any right at this juncture to the relief they seek, their motion for the immediate return of the subject vehicle is denied.

## V.  PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

As part of its answer to the amended complaint, defendant Marhoffer raised the following counter-claims: breach of contract, unjust enrichment, replevin, civil theft, conversion, and fraud. (Marhoffer's Answer to the Amended Complaint and Counterclaims, Doc. No. 27 at 177-81.) At the core of each claim is the allegation that plaintiffs did not tender the purchase price for the vehicle, making Marhoffer the rightful owner of the subject vehicle. (*Id.*) Plaintiffs now seek summary judgment on Marhoffer's counterclaims. (Doc. No. 29.)

Even a cursory review of plaintiffs' dispositive motion reveals that it is steeped in factual disputes, most notably, a dispute as to whether plaintiffs paid the purchase price for the vehicle. (*See* Doc. No. 29 at 193 n.7 [in response to Marhoffer's allegation that plaintiffs never paid for the vehicle, plaintiffs state, without support, that "[t]he Plaintiffs affirmatively maintain that Marhoffer has been paid in full for the Vehicle"].) Summary judgment is generally reserved for a point in time when discovery has taken place. *See generally McKinley v. City of Mansfield*, 404 F.3d 418, 443 (6th Cir. 2005) (district court erred in prematurely granting summary judgment where no discovery had taken place). Moreover, this Court's initial standing order (Doc. No. 3 at 31) and the case management plan and trial order—issued in a case after the case management conference ("CMC") has taken place—provide that parties are generally only entitled to move once for summary judgment.

This case is in its infancy, as the Court has yet to hold a CMC and, as far as the Court is aware, no discovery has taken place. Any ruling on summary judgment now would be premature, and any summary judgment motion would be denied or stayed until discovery could take place. The Court will, therefore, deny the motion for partial summary judgment without prejudice. TTGL, as the only remaining party plaintiff, will be permitted to renew its motion, if it so desires, at the close of discovery.

## VI. Conclusion

For all of the foregoing reasons, the Court GRANTS the motion of Barry and Peake to dismiss Tauwab's claims, and defendant Barry is dismissed from this action. The Court also GRANTS plaintiffs' motion to withdraw their motion to file a second amended complaint, and GRANTS, in part, as set forth in this Opinion and Order, plaintiffs' motion to file a third amended complaint. Additionally, the Court DENIES plaintiffs' motion for the immediate return of the subject vehicle and further DENIES without prejudice plaintiffs' motion for partial summary judgment on Marhoffer's counterclaims.

This case will go forward with defendants Peake and Marhoffer and plaintiff TTGL. The Court intends to schedule this matter for a case management conference during which the Court can set dates and deadlines that will govern this case. However, before the Court can hold a CMC, TTGL must obtain counsel. Corporations cannot proceed in federal court without legal representation and may not be represented by a corporate officer who is not also a licensed attorney. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02, 113 S. Ct. 716, 121 L. Ed. 2d 656 (1993); *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984).  The

20

Court had previously instructed TTGL to obtain legal counsel and, to date, TTGL has failed to do so. The Court will grant TTGL an additional 21 days—until September 15, 2014—to obtain counsel. If no licensed attorney has entered an appearance on behalf of TTGL by September 15, 2014, the Court will dismiss TTGL's claims without prejudice.

**IT IS SO ORDERED**.

Dated: August 25, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**